**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS OCHOA, FRANCISCO MARTINEZ AND JANUARIO SALGADO, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 11 C 2229 |
| v. | ) ) | Judge Dow |
| FRESH FARMS INTERNATIONAL MARKET, INC., DEAN SVIGOS, individually, and MIKE SVIGOS, individually, | ) ) ) | |
| | ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE PARTIES' STIPULATION OF SETTLEMENT AND FOR APPROVAL OF CLASS CERTIFICATION, FORM AND MANNER OF CLASS NOTICE, AND SCHEDULING FAIRNESS HEARING FOR FINAL APPROVAL OF SETTLEMENT**

Named Plaintiffs Luis Ochoa, Francisco Martinez, and Januario Salgado ("Plaintiffs"), on behalf of themselves and all other Plaintiffs similarly situated, by their counsel, move this Court for an order preliminarily approving the Parties' Stipulation of Settlement ("Settlement"), attached hereto as Attachment 1, and an Order Approving Class Certification, the form and manner of class notice, and scheduling Fairness Hearing for final approval of settlement, the Parties' Proposed Order attached as Exhibit D to Attachment 1. Plaintiffs' Counsel has communicated with Defendants' Counsel who has no objection to Plaintiffs' request for preliminary approval of the Settlement and an Order Approving Class Certification, the form and manner of class notice, and scheduling Fairness Hearing for final approval of settlement. In further support of Plaintiffs' Motion, the Plaintiffs state as follows:

1

## I.  PROCEDURAL BACKGROUND

On April 1, 2011, a class action lawsuit was filed in the U.S. District Court for the Northern District of Illinois. The case is currently titled *Luis Ochoa, Francisco Martinez and Januario Salgado, on behalf of themselves and all other persons similarly situated, known and unknown v. Fresh Farms International market, Inc., Dean Svigos, individually and Mike Svigos, individually,* Case No. 11 C 2229.

Plaintiffs allege that they and similarly situated employees of Fresh Farms were not compensated for overtime hours worked at the required overtime wage rate. Count I of the Complaint alleges a violation of the Fair Labor Standards Act ("FLSA") on an individual basis based on allegations of Fresh farms' violation of the FLSA statutory overtime provision. Count II alleges a class-wide violation of the Illinois Minimum Wage Law ("IMWL") overtime provision based on allegations of Fresh farms' violation of the IMWL statutory overtime provision.

This settlement resolves the overtime claims of the Named Plaintiffs and the "Fresh Farms Class" during the class period against Fresh Farms and will terminate all remaining claims in this Lawsuit as against Fresh Farms.

## II.  STANDARD FOR PRELIMINARY APPROVAL

A district court must approve the settlement or compromise of a class action. Fed.R.Civ.P. 23(e); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Nonetheless, the law encourages settlement of class actions and a voluntary settlement is the preferred method of class action resolution. *Isby, et al. v. Bayh, et al.*, 75 F.3d 1191, 1196 (7th Cir. 1996).

In ruling on a motion for preliminary approval of a class action settlement, the district court must determine whether the proposed settlement is within a "range of reasonableness,"

such that notice to the class is warranted. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 319 (N.D. Ga. 1993) ("in assessing the settlement, the Court must determine whether it falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation") (internal citations omitted). If the proposed agreement presents no apparent defects or other indicia of unfairness, then the court should direct that notice of a fairness hearing be given to the class members, where evidence and argument may be presented for and against the proposed settlement. *Staton v. Boeing Co., Inc*., 327 F.3d 938, 959-60 (9th Cir. 2003). Unfairness may be suggested where the proposed settlement unduly favors the class representatives or portions of the class, or where attorneys' compensation is excessive. *Id.* at 969.

## III.   THE PARTIES PROPOSED SETTLEMENT

### A.   The Settlement Amount

Fresh Farms will pay a maximum total settlement amount ("Settlement Amount") of Two Hundred and Seventy-Five Thousand and 00/100 dollars ($275,000.00), which shall include all payments for: (a) claims of all class members who do not opt out of the Settlement (the "Class Settlement Fund"); (b) the Named Plaintiffs' Settlement Payments; and (c) all Plaintiffs' attorneys' fees and costs to Plaintiffs' Counsel, past and future.

Fresh Farms will be responsible for paying from its own funds Federal Unemployment Tax Act ("FUTA") taxes, the employer's share of Federal Insurance Contributions Act ("FICA") taxes on all applicable amounts paid to Class Members. The cost of Class Notice and Claims Administration shall be in addition to and separate from Class Settlement Fund and shall be borne by Plaintiffs' Counsel and Fresh Farms as specified in the Parties' Settlement.

### B.   The Settlement Class and Class Period

The "Settlement Class" means as follows:

All persons employed by Fresh Farms from April 1, 2008 through April 1, 2011 in any hourly position but who were not paid overtime wages for all time worked in excess of forty (40) hours in individual work weeks.

### C. Payments to the Class Members

The Settlement Agreement provides that Fresh Farms will fully fund a $275,000 "Settlement Fund." The Class Settlement Fund shall be the amount of the Settlement Fund less payments to the named Plaintiffs and payment of all attorneys' fees and costs. A Class Member, who has not opted out of the Litigation, shall receive a payment based on the following formulas:

a. **Calculation of Overtime Damages**: As the allegations in this Lawsuit involve alleged "off-the-clock" work, few records exist that would allow the Parties to calculate unpaid overtime wages with specificity. Therefore the Parties have negotiated an amount of overtime wages for each week work based on the average overtime wages allegedly owed to the Named Plaintiffs. For the period of April 1, 2008 through April 1, 2011, all Class Members shall be deemed to be owed $32.05 for each work week in which they worked at least 40 hours or more during the Class Period.

b. **Entitlement to *Pro Rata* Share of Settlement Fund**: In the event the aggregate amount of the amount owed to each class member who properly files a claim (Full Payee Damages) exceeds the amount of the Class Settlement Fund, each payee shall be entitled to a *pro rata* share of the Class Settlement Fund as calculated by the following formula:

*(Full Individual Payee Damages ÷ Total of all Individual Payee Damages) \* Class Settlement Fund*

### D. Named Plaintiff Payments

Each Named Plaintiff shall receive a payment in the amount as set forth in Section 11.1 of the Settlement for release of their overtime claims and for executing a general release to be paid from the Settlement Amount in accordance with the terms of the Settlement (the "Named

Plaintiffs' Payments"). Each Named Plaintiff shall be entitled to an incentive award out of any remainder.

### E.    Release and Bar of Claims

All Class Members who have not excluded themselves from the Settlement by filing timely "opt out" notices with the Court shall be deemed to have relinquished all class claims as set forth in the Lawsuit, and to have released Fresh Farms from any and all liability arising out of those claims. In order to successfully file a claim for settlement proceeds from the Class Settlement Fund, each Class Member shall be required to file such claim on the Claim form attached to the Settlement as Exhibit A to Attachment 1, attached hereto, and also release any claims s/he has or might have for overtime wages as to Fresh Farms, pursuant to the FLSA and the IMWL.

Upon granting final approval of the Settlement, the Court shall dismiss this matter *with prejudice*, retaining jurisdiction solely for the purpose of interpreting, implementing, and enforcing the Stipulation consistent with its terms.

### F.    Attorneys' Fees

Plaintiffs' Counsel seeks an award of 18% of the Settlement Fund or Fifty Thousand and 00/100 Dollars ($50,000.00) to be paid upon the effective date of settlement as for all attorneys' fees expended and that will be expended and for all costs incurred and that will be incurred in seeing this matter through Final Approval, including but not limited to: (i) obtaining Preliminary Approval from the Court; (ii) responding to inquiries from Class Members regarding the Settlement; (iii) assisting Class Members; (iv) acting as Claims Administrator; (v) assisting in resolving any objections; (vi) defending the Settlement and securing the Final Order, including

the conduct of any appellate action. Payment of attorneys' fees and costs pursuant to this section shall be made from the Settlement Amount of $275,000.00.

### G.  Settlement Administration and Notice

The parties have agreed that Plaintiffs' Counsel shall perform the duties of Claims Administrator. The Claims Administrator will distribute the abridged form of the Notice of Class Action, attached to the Stipulation of Settlement as Exhibit B, and any additional notice as provided by this Agreement, field inquiries from Class Members, distribute unabridged forms of the Notice of Class Action, attached to the Stipulation of Settlement as Exhibit C, and handle other issues related to the administration of the Settlement in accordance with the terms of this Agreement, in concert with Fresh Farms' Counsel. Staffing Partners shall cooperate with the Claims Administrator in any way necessary to effectuate this Agreement.

## IV.  THE COURT SHOULD GRANT PRELIMINARY APPROVAL

### A.  Settlement and Class Action Approval Process

As a matter of "express public policy," federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); *see also* 2 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 11.41 (3d ed. 1992) (gathering cases). The traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Class members, would be impracticable. The proposed Settlement

therefore is the best vehicle for Class members to receive the relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* describes a three-step procedure for approval of class action settlements:

(1)     Preliminary approval of the proposed settlement at an informal hearing;

(2)     Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3)     A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Compl. Lit.*, at § 21.632–34. This procedure, used by courts in this Circuit and endorsed by class action commentator Prof. Herbert Newberg, safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 2 Newberg & Conte, at § 11.22, *et seq.*

With this motion, the Plaintiffs request that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement. The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness," and thus whether notice to the class of the settlement's terms and the scheduling of a formal fairness hearing is worthwhile. *Id.* at § 11.25 at 11-36, 11-37. The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1106 (D.C. Cir. 1985) ("Rule 23 places the determination [to approve or reject a proposed settlement] within the sound discretion of the trial judge who can be sensitive to the dynamics of the situation"); *City of Seattle*, 955 F.2d at 1276 (in context of class action settlement, appellate court

cannot "substitute [its] notions of fairness for those of the [trial] judge and the parties to the agreement," and will reverse only upon strong showing of abuse of discretion).

The Court's grant of preliminary approval will allow all Class members to receive Notice of the proposed Settlement's terms and the date and time of the "formal fairness hearing," or final Settlement approval hearing, at which Class members may be heard regarding the Settlement, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented. *See Manual for Compl. Lit.*, at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* § 13.14.

**B.      The Criteria for Preliminary Settlement Approval Are Satisfied**

**1.      The proposed Settlement offers a beneficial resolution to this litigation, thus warranting both this Court's preliminary approval and an opportunity for the Class members to consider its terms**

A proposed Settlement may be approved by the trial court if it is determined to be "fundamentally fair, adequate, and reasonable." *City of Seattle*, 955 F.2d at 1276. In affirming the settlement approved by the trial court in *City of Seattle*, the Court noted that it "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Id.* at 1291 (internal quotation and citation omitted). The district court's ultimate determination "will involve a balancing of several factors" which may include:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of

the proceedings; the experience and views of counsel . . . and the reaction of the class members to the proposed settlement.

*Id.*

**2. This Settlement Is the Product of Serious, Informed, and Arm's-Length Negotiations**

Arm's-length negotiations conducted by competent counsel constitute prima facie evidence of fair settlements. *Berenson v. Faneuil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("[W]here . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair.").

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of this case in particular. Plaintiffs' Counsel is particularly experienced in the litigation, certification, trial, and settlement of wage and hour cases, including nationwide class actions similar to this case. In negotiating this settlement, Plaintiffs' counsel had the benefit of years of experience combined with familiarity with the facts of this case.

Settlement negotiations in this case took place over the course of nearly one year, which culminated in an agreement-in-principle during a settlement meeting between all of the Parties. Thereafter, the Parties continued to negotiate the details of the Settlement Agreement itself for several months. Plaintiffs' Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class.

**3. The Settlement Provides Substantial Relief for Class Members**

The Settlement provides relief for all Class members. All Class members will be eligible to receive a cash payment based on the formulas set forth above for the entire Class Period. Any remaining residual funds[1], including any funds resulting from the failure of class members who did not object to the terms of the settlement to file a timely claim, will be distributed to a

---

[1] Under the Agreement, Fresh Farms will be able to deduct the cost of any "stop payment" bank fees incurred as a result of stopping payment on checks issued to claimants who fail to cash their settlement check within 60 days.

charitable organization. All costs of claims administration will be paid by the Parties and will not result in any reduction of the Class Settlement Fund available to Class members.

### 4.     The Settlement Treats All Class Members Fairly

The Settlement provides relief for all Class Members with respect to the claims asserted in the Litigation. The amount of back overtime pay to be paid to each Class member was determined based upon a sampling of time and payroll documents. The damages for each Class Member's claims shall be calculated equally for all class members and each Class Member who has not opted out of the Litigation shall receive a *pro rata* share of the Class Settlement Fund as describe in paragraph III, C, *supra*.

### 5.     The Payments to Named Plaintiffs are Appropriate

Each Named Plaintiffs shall receive a payment of $25,000 pursuant to the Settlement. These payments shall be made from the Settlement Fund and shall not reduce the Class Settlement Fund of $150,000. These payments to each of the three Named Plaintiffs are appropriate because, in addition to releasing Fresh Farms from claims for overtime wages released by all class members, the Named Plaintiffs shall execute a release of all claims, including, but not limited to, claims for any alleged or claimed retaliation and any claim to a right to reinstatement where appropriate. Plaintiffs believe they are releasing potentially viable claims and, therefore, believe it is appropriate to receive consideration for release of these claims as a part of this overall settlement.

In addition, pursuant to the Settlement, each of the Named Plaintiffs shall be entitled to receive an incentive pay of *up to* $15,000 for Named Plaintiff Januario Salgado, of *up to* $10,000 for Named Plaintiff Luis Ochoa and of *up to* $10,000 for Named Plaintiff Francisco Martinez. These incentive payments will be awarded to the Named Plaintiffs from any Remainder Fund (as

defined in Section 1.22 of the Settlement). Should the Remainder Fund be less than the aggregated maximum of $35,000 for incentive payments to the Named Plaintiffs, each Named Plaintiff shall receive an *pro rata* incentive award based on the formula set forth in Section 11.3 of the Settlement.

The potential incentive payments to the Named Plaintiffs are separate and distinct from the payments to each Named Plaintiffs for release of their claims, discussed more fully above, and are appropriate. Throughout the litigation, the named Class representatives have been available for numerous interviews, have participated in the substantial amount of informal discovery conducted, have participated in settlement negotiations, and have kept informed about the case. Enhancement payments are appropriate in this case. Unlike unnamed Class members, who are the passive beneficiaries of the representatives' efforts on their behalf, named Class representatives agree to be the subject of discovery, including making themselves available as witnesses at deposition and trial, and subject themselves to other obligations of named parties. Small enhancement payments, which serve as premiums in addition to any claims-based recovery from the settlement, promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (courts routinely approve enhancement payments to compensate named plaintiffs for services they provide); *see also Manual for Complex Litigation* (Fourth) § 21.62 n. 971 (2004) ("*Manual for Compl. Lit.*") (enhancement payments may be "warranted for time spent meeting with class members, monitoring cases, or responding to discovery"). Any and all incentive payments will be made to the Named Plaintiffs only after all class members who have properly filed a claim for alleged owed overtime wages pursuant to the procedures set forth in the Settlement receive their payments.

6.  **Plaintiffs' Requested Attorneys' Fees are Fair and Reasonable**

When the amount of the Settlement Fund in this case was negotiated, Fresh Farms' offer was a combined offer which included everything: damages, attorneys' fees, expenses, and costs, including fees and expenses to be incurred by Plaintiffs' attorneys in administrating this matter through disbursement of this Settlement. Such settlements, known as "common fund" settlements, are preferred by the law and fees are awarded from such settlement funds by the Court under "common fund" principles.

It is well settled under the "common fund" doctrine that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gement*, 444 U.S. 472, 478 (1980). The common fund doctrine permits plaintiffs' counsel to petition the court for fees out of a common fund created for the benefit of the plaintiff class. *Id.* The common fund doctrine is based on the idea that "those who have benefited from the litigation should share its costs." *Id.* at 563 (common fund principles "properly control a case which is initiated under a statute with a fee shifting provision, but is settled with the creation of a common fund") (citing *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1989)). Where a common fund is created in return for release of Fresh Farms' liability for damages and for statutory attorneys' fees, the district court's award of fees must be guided by equitable fund principles. *Skelton*, 860 F.2d at 256.

In 1984, the Supreme Court observed that, under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Since *Blum*, a majority of the circuits, including our own, have affirmed that the percentage-of-the-fund method is available to the district court. *Blackburn v.*

*Sundstrand Corp.*, 115 F.3d 493, 494 (7th Cir. 1997). "The common fund doctrine rests upon the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched." *Bishop v. Burgard*, 198 Ill.2d 495, 509, 764 N.E.2d 24, 33, 261 Ill. Dec. 733 (2002) (emphasis added) (citing *Boeing Co v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980)).

The percentage-of-the-fund method is commonly used in awarding attorneys' fees in class action settlements of wage cases bought under IMWL. *Alvarez et al. v. Staffing Partners, Inc. et al.,* Case No. 10 C 6083, Minute Order dated January 17, 2012 (granting final approval of IMWL and IDTLSA class action settlement and awarding attorneys' fees in the amount of 27.5% of $275,000.00 common fund); *Arrez et al. v. Kelly Services, Inc. et al.*, Case No. 07 C 1289, Minute Order dated October 8, 2009 (granting final approval of IWPCA and IDTLSA class action settlement and awarding attorneys' fees in the amount of 30% of an $11,000,000 common fund); *Herrera v. Chicago Mattress, Inc.*, Case No. 06 C 1872, Minute Order dated April 27, 2007 (granting final approval of IMWL class action settlement and awarding attorneys' fees in the amount of 33 1/3% of $175,000.00 common fund); *Evangelio v. Midway Services, Inc. and Bally Total Fitness Corp.*, Case No. 06 C 4548, Minute Order dated May 4, 2007 (granting preliminary approval of IMWL class action settlement and awarding attorneys' fees in the amount of 33 1/3% of $85,000.00 common fund); 1 Mary Francis Derfher and Arthur D. Wolf, *Court Awarded Attorney Fees*, P 2.05[7] at 2-81 (2001) ("[T]he mere fact that a fee-shifting statute is implicated in the action does not ensure that fees will be awarded under that statute. . . . [F]ees may be taxed against the [settlement] fund under the common fund doctrine." (citing *Skelton* and *Florin*); *see also* Comment: Attorneys' Fees in Class Actions Governed by Fee-Shifting Statutes, 68 U. Chi. L. Rev. 1007 (2001).

Other courts in this district also commonly award attorney's fees equal to one-third or more of the total recovery, and indeed, courts around the country frequently award fees in common fund cases in the 30-50% range. *See* 18 Class Action Reports at 537 (1995).

The fee requested here, 18% of the recovery, is well below the awards sought and granted by courts in the Chicago area, in this judicial district, and around the country.

## CONCLUSION

For the foregoing reasons, the Plaintiffs request that the Court: (i) grant this Motion for preliminary approval of the Parties' Stipulation of Settlement; (ii) approve class certification of the class identified herein; (iii) approve the Notice of Class Action, Proposed Settlement and Hearing; (iv) authorize notice to the Class; (v) set a date for the Fairness Hearing; and (vi) grant all further relief deemed just and proper.

Respectfully Submitted,

Dated: March 29, 2012

s/Christopher J. Williams
Christopher Williams
Workers' Law Office, P.C.
401 S. LaSalle, Suite 1400
Chicago, Illinois 60605
(312) 795-9121